## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Bankr. No.: 23-00811 |
| | ) | |
| First Premier Funding, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |

### Memorandum Opinion on Cook County Land Bank Authority's Motion to Dismiss the Bankruptcy Case pursuant to 11 U.S.C. § 1112(b) (Dkt. 22)

This matter comes before the court on the Motion of County of Cook d/b/a Cook County Land Bank Authority ("CCLBA," "Movant," or the "Land Bank") to Dismiss the bankruptcy case ("Mot.") filed by First Premier Funding, LLC (the "Debtor" or "First Premier") pursuant to 11 U.S.C. § 1112(b), the Debtor's Response ("Resp.") (Docket 35), and CCLBA's Reply ("Reply") (Docket 40). In its July 20, 2023 Order (Docket 32), the court also requested that the parties brief the following additional issues and submit the following additional documents:

1. The Debtor was required to submit a copy of the trust agreement and any other documents that evidence the role of First Premier Funding, LLC in relation to the real estate located at the 17100 Halsted Street, Harvey, Illinois, Property Identification Numbers 29-29-206-020-0000 and 29-29-206-024-0000 in bankruptcy case No. 23-00811 on or before August 4, 2023.

2. The parties were ordered to simultaneously file briefs on the docket of the bankruptcy case by August 4, 2023 discussing (i) whether First Premier Funding, LLC is a beneficiary of a trust in relation to the real estate in issue and (ii) whether First Premier Funding, LLC, as a beneficiary, has authority to file a bankruptcy case on the behalf of any trust.

3. The parties were also ordered to simultaneously file briefs discussing whether this bankruptcy case was filed on or behalf of a land trust and whether the filing was collaterally estopped or barred by res judicata by the court's prior orders dismissing Capital Equity's bankruptcy case, Bankr. No. 22-02580, and the related Adversary Proceeding No. 22-00037.

In accordance with the order, the Movant submitted a Supplemental Brief in support of its Motion to Dismiss ("Movant's Suppl. Br.") (Docket 42); the Debtor submitted a Supplemental Response Brief ("Debtor's Suppl. Br.") (Adv. Dkt. 29) and a copy of the trust agreement (Adv. Dkt. 29, Ex. 1) on the docket of the related adversary case. *See* Debtor's Suppl. Br. (Adv. Dkt. 29), Ex. 1, *First Premier Funding, LLC v. Cook Cnty. Land Bank Auth.*, Ch. 11 Case No. 23-00811, Adv. No. 23-00045 (Bankr. N.D. Ill. filed Feb. 28, 2023) (hereinafter *"First Premier v. CCLBA"*).

An in-person contested evidentiary hearing was held on Tuesday, August 8, 2023 at which each party was given the opportunity to testify, call witnesses, and submit exhibits. *See* Order (Dkt. 32).

## I. Jurisdiction and Venue

The court has jurisdiction over this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), a matter concerning the administration of the estate.

## II. Background

First Premier Funding, LLC is the beneficiary of a land trust, the Capital Equity Land Trust

No. 2140215 ("Capital Equity" or the "Land Trust").[1]  Capital Equity previously held title to the property at 17100 Halsted Street, Harvey, IL 60426, Property Identification Numbers (PINs) 29-29-206-024-0000 and 29-29-206-020-0000 (the "subject property" or the "17100 Halsted Street Property"). *See Cap. Equity*, 646 B.R. at 466.  However, pre-petition, on July 17, 2019, the subject property was sold to the County of Cook d/b/a Cook County Land Bank Authority via a scavenger sale after Capital Equity defaulted on paying its property taxes for several years. *See Cap. Equity*, 646 B.R. at 466.  On October 21, 2021, in Case Nos. 2020 COTD 1321 and 2020 COTD 1369, the Circuit Court of Cook County issued orders directing issuance of tax deeds as to the subject property. Resp. (Dkt. 35), Ex. 7, pp. 2, 5, 8, *First Premier*.  First Premier alleges that the state court orders were timely appealed. *Id.* at p. 2. On February 10, 2022, CCLBA filed tax deeds for the property with the Cook County Recorder of Deeds. *Id.* at p. 3.

Soon thereafter, on March 7, 2022, Capital Equity filed a petition for bankruptcy relief under Chapter 11. Petition (Dkt. 1), *Cap. Equity*, Bankr. No. 22-02580.  On November 9, 2022, Capital Equity's bankruptcy case was dismissed. Order (Dkt. 38), *Cap. Equity*, Bankr. No. 22-02580. This court dismissed the case because it found that (1) as a land trust, Capital Equity was ineligible for bankruptcy relief under 11 U.S.C. § 109(d) and (2) there was "cause" for dismissal under § 1112(b) because the case was not filed in good faith. *Cap. Equity*, 646 B.R. at 466, 478.  This court reasoned that the case was filed in bad faith because Capital Equity filed bankruptcy while awaiting resolution

---

[1] *See* Aug. 8, 2023 Hr'g. Tr., 15:11–13, *In re First Premier Funding, LLC*, Bankr. No. 23-00811 (filed Jan. 20, 2023) (hereinafter "Aug. 8, 2023 Hr'g. Tr."); *In re Cap. Equity Land Tr. No. 2140215*, 646 B.R. 463, 466 (Bankr. N.D. Ill. 2022).

    This court's published opinion, *In re Cap. Equity Land Tr. No. 2140215*, 646 B.R. 463, and all other filings on the docket of the bankruptcy case, *In re Cap. Equity Land Tr. No. 2140215*, Bankr. No. 22-02580, will be referred to as "*Cap. Equity*."

    The instant bankruptcy case, *In re First Premier Funding, LLC*, Bankr. No. 23-00811, will be referred to as "*First Premier*."

of its pending appeal of the state court tax proceeding; this suggested that its filing for bankruptcy relief was a "litigation tactic." Capital Equity failed to show it had income to fund a reorganization plan. Its position was that once it regained the property, it would lease it. *Id.* at 477-78. The land trust's beneficiary now argues that it will use $500,000 from a co-beneficiary to fund a plan and seek to develop the property as a hotel now that a casino is expected to be built nearby. Aug. 8, 2023 Hr'g. Tr. at 21:13–22.

On January 20, 2023, Capital Equity's beneficiary, First Premier, filed a petition for bankruptcy relief under Chapter 11. Petition (Dkt. 1), *First Premier*. Although neither First Premier nor Capital Equity have title to the 17100 Halsted Street property, First Premier listed the property as the location of its "principal assets" in the petition. *Id.*, Form 201, Question 4, Dkt. 1 p.1. First Premier states that it holds a beneficial interest in the property and that it has two members: Tiffany Webb (who holds 80% of First Premier Funding, LLC) and GTR Financial LLC. *Id.*, Form 206, Question 55.1, Dkt. 1, p. 12. First Premier valued the subject property at $2,000,000. *Id.*

On February 28, 2023, First Premier filed an adversary complaint against CCBLA for fraudulent conveyance seeking re-vestment of the subject property and a judgment for the difference between the value of the County's liens and the value of the property. *See* Complaint ("Compl.") (Adv. Dkt. 1), *First Premier v. CCLBA*, Adv. No. 23-00045, p. 4.[2] On April 20, 2023, the Debtor filed a Single Asset Real Estate (SARE) Plan of reorganization, predicated on the return of the subject property to First Premier. *See* Plan (Dkt. 20), *First Premier*.

---

[2] A separate motion to dismiss and responsive pleadings were filed in the adversary case. *See* Mot. to Dismiss (Adv. Dkt. 10); Debtor's Resp. (Adv. Dkt. 21); Movant's Reply (Adv. Dkt. 27), Statement of Additional Issues (Adv. Dkt. 28); Debtor's Suppl. Br. (Adv. Dkt. 29), *First Premier v. CCLBA*, Adv. No. 23-00045.
  The Debtor's supplemental brief addresses issues raised by the motions to dismiss the adversary proceeding and the motion to dismiss the bankruptcy case. *See* Suppl. Br. (Adv. Dkt. 29).

On April 26, 2023, CCBLA filed the instant motion, alleging that First Premier's bankruptcy case was not filed in good faith because it does not have business revenue, does not own any land or assets, and the bankruptcy is being used as a litigation tactic after the state court denied Capital Equity's appeal. Mot. (Dkt. 22), pp. 4-5, *First Premier*; *see In re Application of the Cnty. v. Capital Equity Land Trust #2140215*, 2022 IL App (1st) 211511 (Ill. App. Ct. 2022).

In its Response, First Premier essentially argues that the transfer of the property to CCLBA was a taking under the 5th and 14th Amendments of the U.S. Constitution, and that, consequently, the plan should be confirmed to allow the Debtor to pay the delinquent real estate taxes to CCLBA and obtain the subject property or that CCLBA must provide compensation for the taking of the property. *See* Resp. (Dkt. 35), pp. 1, 9, *First Premier* (citations omitted). The Debtor argues that it would have revenue if it were allowed to access the property again or if it were paid just compensation. *Id.* The Debtor also argues that an individual, Todd Hansen, and his entity, GTR Financial, would provide the Debtor funds to consummate the plan. *Id.* at 3. Mr. Hansen is one the Debtor's members.

In its Reply, regarding First Premier's argument about a taking, CCLBA disputes Debtor's argument that *Tyler v. Hennepin Cnty*, 598 U.S. 631 (2023), applies herein and argues *Tyler* does not demand that the bankruptcy court confirm a plan to allow the real estate taxes be paid to CCLBA or that CCLBA provide compensation for the taking of the subject property. Reply (Dkt. 40), pp. 1-3, *First Premier* (citations omitted). CCLBA also argues that the Debtor has failed to substantiate its claim that the property is worth $2,000,000 or, at a minimum, is valued higher than the total tax debt. *Id.*, p. 2. In its Supplemental Brief, CCLBA argued that (1) the Debtor, First Premier, has not shown it has the authority to file a bankruptcy petition on behalf of the Debtor and (2) the current

bankruptcy filing by Capital Equity's beneficiary, is barred by res judicata because this court previously dismissed the bankruptcy filing by Capital Equity. Movant's Suppl. Br. (Dkt. 42), pp. 1-3, *First Premier*.

In response, First Premier argued this court's prior opinion in Capital Equity's bankruptcy case suggested that First Premier, as the beneficiary of the land trust, had authority to seek bankruptcy relief. *See* Debtor's Suppl. Br. (Adv. Dkt. 29), p. 5, *First Premier v. CCLBA* (citations omitted).[3] First Premier also argues res judicata does not apply because Capital Equity's bankruptcy case did not involve identical issues, since the eligibility of First Premier, Capital Equity's beneficiary, to file bankruptcy on behalf of Capital Equity was not discussed. *Id.* at p. 7.

Tiffany Webb signed the petition in the first-filed bankruptcy case, *In re Capital Equity Land Trust # 2140215*. *See* Bankruptcy Case 22-02580, Dkt. 1, p.5, where her signature appears as the authorizing representative of that Debtor. That document notes her title as a member of First Premier Funding, LLC/Holder of Beneficial Interest.

After the November 9, 2022 dismissal of the Capital Equity case, Tiffany Webb signed the bankruptcy petition initiating the First Premier Funding, LLC bankruptcy case. *First Premier* Bankruptcy Case, 23-00811, Dkt. 1, p.5.

First Premier relies on language in the Memorandum Opinion dismissing Capital Equity's

---

[3] Relying on the trust agreement, in its opinion dismissing Capital Equity's bankruptcy case, this court reasoned that:

> In the case before the Court, the beneficiary's interest consists solely of the power of direction to deal with the title and to manage and control the property. It also had the right to receive the property's proceeds. . . . The problem for Capital Equity is that its beneficiary is not seeking bankruptcy relief; the land trust, Capital Equity, is the debtor, not the beneficiary, First Premier Funding, LLC, the entity entitled to the land trust's profits and proceeds. . . .

*See Cap. Equity*, 646 B.R. at 465, 469 (Bankr. N.D. Ill. 2022) (citations omitted); *see also* Ex. (Dkt. 33), Art. 1, p. 1, *Cap. Equity*, Bankr. No. 22-02480 (the trust agreement for Capital Equity).

bankruptcy case to justify the subsequent case filed by First Premier:

> Capital Equity was formed to hold title to the real property in issue. Under Illinois law, the property is the beneficiary's personal property. In land trust situations, the beneficiary is considered the equitable owner of the real property and, as found by the Seventh Circuit in the *Matter of Gladstone Glen*, was, therefore, eligible to be a debtor under the Bankruptcy Act, the Bankruptcy Code's predecessor. *Matter of Gladstone Glen*, 628 F.2d 1015, 1018-19 (7th Cir. 1980). The Seventh Circuit noted that under Illinois law, a land trust beneficiary possessed neither legal nor equitable title to the realty; the beneficiary was regarded as owning only a personal property interest in the proceeds of the trust res. However, the Court of Appeals was not limited to the contours of Illinois law. The Court noted that the Illinois land trust "serves as a useful vehicle in real estate transactions for maintaining the secrecy of ownership and allowing ease of transfer" (citation omitted). *Id.*, at 1018. The Court also noted that "true ownership lies with the beneficiaries though title lies with the trustee. The trustee derives all of his power from the beneficiary and acts solely on the beneficiary's behalf." *Id.*

> Because the beneficiary was the owner of the res in the economic sense, the Seventh Circuit looked to the substance of the matter. In doing so, the Seventh Circuit held that the beneficiary of a land trust was an owner eligible to pursue bankruptcy relief within the meaning of § 406(6) of the Bankruptcy Act. *Id.* at 1019. Under the Agreement herein, the Trustee has no duty to manage or control Capital Equity or its rent proceeds, to enforce its leases, or to pay taxes except as provided therein. The Trustee was to incur no personal liability for any claim for anything it did; any such liability was waived. Contracts could be entered into in the name of the beneficiary or the Trustee, but not individually. The Trustee was authorized, in return for compensation, to execute deeds, mortgages, and otherwise deal with the legal title of the property when authorized by the beneficiary. Agreement, Article 8, p.3.

> In the case before the Court, the beneficiary's interest consists solely of the power of direction to deal with the title and to manage and control the property. It also had the right to receive the property's proceeds. Agreement, Article 1. The problem for Capital Equity is that its beneficiary is not seeking bankruptcy relief; the land trust, Capital Equity, is the debtor, not the beneficiary, First Premier Funding, LLC, the entity entitled to the land trust's profits and proceeds. Agreement, p. 1.

*See In re Cap. Equity Land Tr. No. 2140215*, 646 B.R. 463,468-69 (Bankr. N.D. Ill. 2022).

The court did not suggest that the beneficiary of a land trust had the right to file a successive bankruptcy case under circumstances where the initial bankruptcy case, filed by the same

-7-

beneficiary's representative, was dismissed. Tiffany Webb did not appeal the November 9, 2022 dismissal. The second bankruptcy case involves the same real estate in the same land trust. The pleadings in the second bankruptcy case have not shown why the prior dismissal should not bind the filing representative, Tiffany Webb, the filer of the first case, *In re Capital Equity*.

At the August 8, 2023 hearing, the Debtor, First Premier, called Ms. Tiffany Webb as a witness. *See* Aug. 8, 2023 Hr'g. Tr. at 7, *First Premier*. Ms. Webb testified that she was the "manager" of First Premier, which is the "beneficiary" of Capital Equity. *Id.* at 7, 33. She testified that she is a member of First Premier, LLC, that she owns 80% of First Premier Funding, LLC, and that her partner, Todd Hansen, and his entity own 20%. *Id.* at 7, 20–21. When asked about First Premier's assets and liabilities at this time, Ms. Webb testified that "the only property we had was the 17100 Halsted," and as of now, First Premier has no assets, but First Premier owes "roughly" $199,000 to New Wave Investments, LLC, one of the "initial investors" that helped with the acquisition of the subject property. *Id.* at 33–34. She testified that Mr. Hansen "does real estate" and "financing," and agreed to provide "a little over $500,000" in DIP financing to First Premier to fund the Chapter 11 plan. *Id.* at 21. Mr. Hansen did not testify about the proposed funding, but a copy of the DIP financing agreement was admitted into evidence.

CCBLA's Counsel, Mr. Malik, stated that "there is a state court case pending with the supreme court," for which the parties have submitted briefs, and argued that this suggested that the Debtor was "trying to set aside this tax deed in state court and in the bankruptcy court at the same time for the same purpose so they could get the property back, set aside the tax sales." *Id.* at 54–55.

This court notes that having this bankruptcy case and the adversary pending while the state court matter was pending could have resulted in the court systems entering conflicting judgments.

In addition, this effort of pursuing its goals in two court systems amounts to forum shopping.

## III. Discussion

In its papers, Movant raises issues of agency law, claim preclusion, and good faith. Mot. (Dkt. 22), pp. 4-5; Movant's Suppl. Br. (Dkt. 42), pp. 1-3. Because the Movant did not properly raise the authority to file issue, agency law will not be discussed.

### A. Preclusion

"The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." *See Katchen v. Landy*, 382 U.S. 323, 334 (1966) (citations omitted). Where the judgment claimed as preclusive was entered by a federal court, collateral estoppel and res judicata principles are governed by federal law.[4]

This court requested that the parties brief the issues of whether First Premier's bankruptcy filing was collaterally estopped or barred by res judicata by this court's prior orders dismissing Capital Equity's bankruptcy case and the related adversary proceeding. *See* Order (Dkt. 32), pp. 2-3, *First Premier*. However, Movant's arguments address only res judicata (claim preclusion), not collateral estoppel (issue preclusion). Movant's Suppl. Br. (Dkt. 42), pp. 1-3. For this reason, and the fact that the court finds dismissal of this bankruptcy case is appropriate on other grounds, this opinion will only address the application of res judicata herein.[5]

---

[4] *See In re Sharif*, 457 B.R. 702, 730 (Bankr. N.D. Ill. 2011) (applying federal law to determine whether res judicata applied where an adversary proceeding was claimed as preclusive); *see also In re Patel*, No. 19 B 08032, 2020 WL 6938796, at *2 (Bankr. N.D. Ill. Oct. 13, 2020), *aff'd sub nom. Patel v. MS Int'l, Inc.*, No. 20-CV-06234, 2021 WL 4355369 (N.D. Ill. Sept. 24, 2021) (applying federal law on collateral estoppel where a district court judgment was claimed as preclusive).

[5] "The Court may raise an issue of collateral estoppel *sua sponte* if it gives the parties an opportunity to argue the issue." *Nguyen v. Kaiser Found. Health Plan, Inc.*, No. SACV1700905PSGDFM, 2019 WL 3769967, at *9 n.4 (C.D. Cal. June 27, 2019).

The United States Supreme Court has addressed the similar issue of whether a court may raise the doctrine

-9-

### 1. Res Judicata

"In federal court, res judicata—or claim preclusion—has three elements: (1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (citing *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011)).

The first element of res judicata is whether the party against whom res judicata is asserted was a party in the prior case or was in privity with a party in the prior case.

The second element, whether there is an "identity of the cause of action," depends on whether the claims arise out of the same set of operative facts or the same transaction." *Matrix IV, Inc.*, 649 F.3d at 547 (citing *In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir.1987)). Even where the two claims are predicated on different legal theories, the "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.* (citing *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir. 1993)).

Regarding the third element, a final judgment on the merits, the District Court has explained that in order for a judgment to be final and appealable, "[t]he order need not dispose of all the issues presented by the pleadings," but "[i]t must be final in the sense that it disposes of the rights of the

---

of res judicata *sua sponte*:

> "'[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste."

*See Ariz. v. Cal.*, 530 U.S. 392, 412 (2000) (citing *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)).

Here, the parties had the opportunity to address the issue of collateral estoppel in their briefings and at the August 8, 2023 hearing.

-10-

parties, either upon the entire controversy or upon some definite and separate part thereof." *In re Walker*, 232 B.R. 725, 733 (Bankr. N.D. Ill. 1999) (citing *Kellerman v. Crowe*, 119 Ill. 2d 111, 115 (Ill. 1987)).

The first element of res judicata has been met, as the Debtor, First Premier, concedes that it was in privity with a party to the prior adjudication, Capital Equity. Debtor's Suppl. Br. (Adv. Dkt. 29), pp. 8-9, *First Premier v. CCLBA*. The Debtor concedes privity but argues that the November, 2022 dismissal order was not substantive:

> Because the decided issues in the prior adjudication are different that [sic] the current issues in the case at bar, there was no final judgment. Yes, the bankruptcy case and adversary proceeding was dismissed in the Capita Equity case however, not on the merits of the Plan or the issues presented in the Complaint. The Capital Equity ruling was based upon completely different rules of law.
>
> 3. [T]he party against whom estoppel or Res Judicata is asserted was a party or in privity with a party to the prior adjudication (Collateral Estoppel and Res Judicata)[.] This issue favors Land Bank. However, it favors land bank only as to the privity between the two Debtors and two Plaintiffs.

Debtor's Suppl. Br. (Adv. Dkt. 29), pp. 8-9, *First Premier v. CCLBA*.

The prior adjudication was substantive; this court ruled as a matter of law that the Debtor Capital Equity Land Trust was not eligible to be a debtor based on the Bankruptcy Code's definition of a business trust.

The second element, whether there is an identity of the causes of action, is met as First Premier's bankruptcy case and Capital Equity's prior bankruptcy case arise out of the "same set of operative facts or the same transaction": both bankruptcy filings arose out of CCLBA's acquisition of the subject property at 17100 Halsted, Harvey, IL and First Premier's only asset (which it no longer owns) was the subject property, of which it was a beneficial owner as the beneficiary of

Capital Equity. *See* Aug. 8, 2023 Hr'g. Tr. at 33–34, *First Premier*. The bankruptcies may be based on different legal theories in that the first concerned the land trust's eligibility to be a debtor and here the debtor is a land trust's beneficiary. With respect to the adversary proceeding, the Debtor now alleges there was a fraudulent conveyance and a taking.[6] However, both bankruptcy filings arise out of the same transaction (the state court tax proceedings) and concern the same factual allegations that CCLBA's acquisition of the property was improper. The Debtors sought then and now to regain the property. *See, e.g., Cap. Equity*, 646 B.R. at 477 (stating that Capital Equity stated that once it regains the subject property, it will lease it); Plan (Dkt. 20), *First Premier* (First Premier's SARE Plan, predicated on the return of the subject property to First Premier).

The land trust has different parties who acted on its behalf, its Trustee and its beneficiary. Its beneficiary, Tiffany Webb (as manager of beneficiary First Premier), filed each bankruptcy case. This satisfies the second element of res judicata not just because the same person filed each case, but because each case arises out of the same set of operative facts. In addition, each adversary proceeding seeks to avoid the same transaction, the tax deed sale.

The issues are the same in the two bankruptcy cases and in the two adversary cases.

The final element of res judicata, that the order resolving the prior matter be final, is satisfied by the November 9, 2022 dismissal orders in Capital Equity's bankruptcy case and in the related adversary proceeding.

First Premier's bankruptcy case is virtually identical to Capital Equity's bankruptcy case.

---

[6] *Compare* Compl. (Adv. Dkt. 1), *Cap. Equity Land Tr. #2140215 v. Cook Cnty. Land Bank Auth. (In re Cap. Equity)*, Ch. 11 Case No. 22-02580, Adv. No. 22-00037, pp. 2-4 (Bankr. N.D. Ill. filed Mar. 8, 2022) (alleging that CCLBA's acquisition of the property via the state tax proceeding constituted an avoidable fraudulent conveyance) (citing 11 U.S.C. § 548), *with* Compl. (Adv. Dkt. 1), *First Premier v. CCLBA*, Adv. No. 23-00045 (alleging there was a fraudulent conveyance under 11 U.S.C. § 548), *and* Debtor's Resp. (Adv. Dkt. 35) (alleging CCLBA's acquisition of the property was a constitutional taking and a fraudulent conveyance).

Each case was filed by the land trust's beneficiary, Tiffany Webb. No plan was filed in the Capital Equity case; a plan has been filed in the First Premier case.

Res judicata bars her effort herein to re-litigate the issues and claims resolved in the Capital Equity case. The primary ground supporting dismissal in the Capital Equity case was its ineligibility due to it being a land trust, not a business trust. *See Capital Equity*, 646 B.R. at 471-76. The Debtor First Premier has not addressed whether it was a business trust when its bankruptcy case was filed, an issue resolved in the prior case. It has not shown that the Trust Agreement identifies business activity it will engage in. Nor has it identified business activity it has engaged in to date.

Ms. Webb's August 8, 2023 testimony in the First Premier case revealed that no business was conducted in connection to the trust/property from 2015 to 2022. Aug. 8, 2023 Hr'g. Tr. at 47–48. She said that they tried to put a business there. *Id.* at 46.

As noted in this court's previous opinion, the Trust Agreement does not include language covering the establishment or running of a business in relation to the property.

First Premier claims as its debts virtually the same debts scheduled by Capital Equity. The bankruptcy cases were filed by the same person claiming the same real estate as an asset of each entity, while each attempts to avoid the same state court tax sale. Res judicata bars the beneficiary Tiffany Webb from again seeking bankruptcy relief where she failed to prevail on CCLBA's allegation in the prior Capital Equity case that the entity she represents was not eligible for bankruptcy protection because it was not a business trust.

Res judicata bars claims that were litigated and claims that could have been litigated. It is too late to claim to be a business trust by stating that it will develop a hotel in the future.

The third element, a "final judgment on the merits," is met. The order dismissing a land

trust's bankruptcy case may preclude its beneficiary from later filing bankruptcy on its behalf.

## B. "Cause" to Dismiss a Chapter 11 Case

Section 1112(b)(1) provides that, where there is "cause," a bankruptcy court "shall" dismiss

or convert a chapter 11 case to chapter 7, "whichever is in the best interests of creditors and the

estate." 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) provides a non-exhaustive list of examples of

"cause" for dismissal or conversion. *See In re Royalty Props., LLC*, 604 B.R. 742, 747 (Bankr. N.D.

Ill. 2019) (citing 11 U.S.C. § 1112(b)(1)). Bankruptcy courts have "discretion" to decide whether

to dismiss a Chapter 11 case under § 1112(b). *See In re Bartle,* 560 F.3d 724, 730 (7th Cir. 2009).

In its Supplemental Brief, CCLBA argues that the bankruptcy case should be dismissed

because the beneficiary (the Debtor) has not shown that it had authority to file the bankruptcy

petition on behalf of the Debtor, since there is no showing that the beneficiary had the authority to

act on behalf of the Debtor. Movant's Suppl. Br. (Dkt. 42), pp. 1-2, *First Premier.*[7]

This argument will be disregarded because the movant bears the burden of proof on the issue

of a debtor's authority to seek bankruptcy relief and the CCLBA has not carried its burden. CCLBA

has to show why it lacks authority; it has not done so. *See In re NNN 123 North Wacker, LLC,* 510

B.R. 854, 859 (Bankr. N.D. Ill. 2014) ("The movant . . . bears the burden to demonstrate by a

preponderance of evidence that the bankruptcy filing was unauthorized.").

In its motion, CCLBA argues that First Premier's bankruptcy petition was filed in bad faith

because First Premier (i) lacks business revenue, (ii) owns no land or assets and (iii) it is using the

---

[7] Specifically, CCLBA argues that First Premier has not shown that Tiffany Webb, who filed this bankruptcy petition, had the authority to file this bankruptcy case. *See* Movant's Suppl. Br. (Dkt. 42), pp. 1-2.

In its Response to the motion to dismiss, the Debtor stated that Ms. Webb is the "principal of the Debtor." Response (Dkt. 35), p. 3. Ms. Webb testified that she was the "manager" of First Premier and owned 80% of the LLC. Aug. 8, 2023 Hr'g. Tr. at 20–21.

bankruptcy case as a litigation tactic amidst its currently unsuccessful efforts to appeal the results

of the state court tax proceeding.  Mot. (Dkt. 22), pp. 4-5, *First Premier*.

### 1. Bad Faith

A debtor's failure to file a bankruptcy petition in good faith may constitute "cause" for

dismissal under 11 U.S.C. § 1112(b).  *See Cap. Equity*, 646 B.R. at 467 (citing *In re Tekena USA,*

*LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009)); *In re Royalty Props., LLC*, 604 B.R. at 747 (Bankr.

N.D. Ill. 2019) (citing 11 U.S.C. §§ 1129(a)(3); 1112(b); *In re Jartran, Inc.*, 886 F.2d 859, 867 (7th

Cir. 1989) (stating that courts have found bad faith is an acceptable basis for conversion or dismissal,

although § 1112(b) does not expressly state that bad faith constitutes cause)).  Section 1129(a)(3)

requires that reorganization plans be proposed in "good faith," which courts have generally

interpreted to mean that there is a "reasonable likelihood that the plan will achieve a result consistent

with the objectives and purposes of the Bankruptcy Code." *Id.* (citing 11 U.S.C. §§ 1129(a)(3); *In*

*re LJBV LTD,* 544 B.R. at 406).

### a. *Tekena* Factors

Courts consider various non-exhaustive factors, the so-called *"Tekena* factors," to determine

whether the debtor acted in good or bad faith:

1. The debtor has few or no unsecured creditors.
2. There has been a previous bankruptcy petition by the debtor or a related entity.
3. The pre-petition conduct of the debtor has been improper.
4. The petition effectively allows the debtor to evade court orders.
5. There are few debts to non-moving creditors.
6. The petition was filed on the eve of foreclosure.
7. The foreclosed property is the sole or major asset of the debtor.
8. The debtor has no ongoing business or employees.
9. There is no possibility of reorganization.
10. The debtor's income is not sufficient to operate.
11. There was no pressure from non-moving creditors.

-15-

12. Reorganization essentially involves the resolution of a two-party dispute.
13. A corporate debtor was formed and received title to its major assets immediately before the petition and
14. The debtor filed solely to create the automatic stay.

*See In re Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986) (citations omitted); *see also In re Tekena USA, LLC*, 419 B.R. at 346 (citations omitted); *In re Lake Mich. Beach Pottawattamie Resort LLC*, 547 B.R. 899, 905-06 (Bankr. N.D. Ill. 2016) (citations omitted).

No single factor is determinative. *See Cap. Equity*, 646 B.R. at 477 (citation omitted). Instead, in each case, the court must review the "totality of the circumstances" as they existed when the petition was filed. *See In re Lake Mich. Beach Pottawattamie Resort LLC*, 547 B.R. at 905, 907; *In re Tekena USA, LLC*, 419 B.R. at 349.

Here, factors 1, 2, 4, 5, 8, 11, and 12 suggest that the petition was filed in bad faith. *See In re Grieshop*, 63 B.R. at 663 (citations omitted). First, the debtor has very few unsecured creditors (factor 1), since it has only eight (8) unsecured creditors. *See* Petition (Dkt. 1), Schedule E/F, *First Premier*, Bankr. No. 22-00811. Second, there was a previous bankruptcy petition by a "related entity," Capital Equity (factor 2).

Note that in each bankruptcy case the Schedules D: Creditors Who Have Claims Secured by Property are essentially identical. The Schedules E/F in each bankruptcy case are also similar.

Third, CCLBA persuasively argues that, the petition is being used as a "litigation tactic" amidst the Debtor's efforts to appeal the state court tax proceedings. Mot. (Dkt. 22), pp. 4-5, *First Premier*. That is what this court previously found with respect to Capital Equity's bankruptcy filing. *Cap Equity*, 646 B.R. at 477. The petition could effectively be used to evade court orders (factor 4), since the Debtor seeks return of the property (or compensation) based on its assertion that CCLBA's

acquisition of the property constitutes an unconstitutional taking. *See* Resp. (Dkt. 35), pp. 1, 9, *First Premier* (citations omitted).

The Debtor is not left without recourse. It should be able to pursue a *Tyler* claim in state court as the property owner in *Tyler* did.

In its Response to the court's Additional Issues request, Docket 28 in Adversary Proceeding No. 23-00045, the Debtor suggested that "[t]he appeal was previously decided . . . ." If this was meant to suggest that the state court case had ended, it may not be true. The CCBLA noted in its Reply in the bankruptcy case that "the Debtor files this bankruptcy, while its Land Trust continues to file appeals in State Court by citing the same *Tyler* case in an effort to reverse the tax deed sale." Reply (Dkt. 40), pp. 2-3, *First Premier*. Capital Equity filed a Petition for Leave to Appeal (PLA) the Appellate Court's ruling denying its appeal to the Illinois Supreme Court. *See* PLA No. 129621 of Petitioner, *Cnty. of Cook v. Cap. Equity Land Tr. #2140215* (Ill. filed May 1, 2023). The Petition for Leave to Appeal was denied by the Illinois Supreme Court on September 27, 2023. *See Petition for Leave to Appeal Dispositions*, ILL. COURTS, https://www.illinoiscourts.gov/supreme-court/leave-to-appeal/ (last visited Sept. 29, 2023) (the disposition on PLA No. 129621 is on page 27 of the Illinois Supreme Court's September 27, 2023 Leave to Appeal Docket in the PDF on the court's website).

Here, the Debtor has very few debts to non-moving creditors (factor 5).

Factor 8, whether the debtor has any ongoing business or employees, is met. Ms. Webb testified that First Premier's only asset was the subject property (17100 Halsted), and as of now First Premier has no other assets. Aug. 8, 2023 Hr'g. Tr. at 33–34, *First Premier*. She also testified that First Premier acquired the subject property in 2015, at which time a business (a strip club) was

-17-

operated on the premises. *Id.* at 47. However, Ms. Webb testified that there has been no business operated on the subject property from 2016 to 2022, at which time CCLBA's deed was recorded. *Id.* at 47–48. There was no evidence or testimony suggesting the Debtor had or has an ongoing business or employees. Factor 8 has been met.

Factor 11, whether there was pressure from non-moving creditors, is likely met, since there was no testimony or evidence suggesting the Debtor received pressure from other creditors. To the contrary, Ms. Webb's testimony suggested that the filing was motivated by the Debtor's desire to get the subject property back. *See id.* at 14, 28, 37 (Ms. Webb's testimony about her intention to pay the delinquent taxes to regain the property).

Factor 12, that reorganization essentially involves the resolution of a two-party dispute, is met, since the plan is predicated on the Debtor succeeding in either its adversary proceeding or the appeal of the state court tax proceedings against the CCLBA. *See* Plan (Dkt. 20), *First Premier.*

### b. Litigation Tactic and Ability to Reorganize

"One of the hallmarks of bad faith in filing a petition is pre-petition litigation already pending in the state court between the parties." *In re Tekena USA, LLC,* 419 B.R. at 346; *see Cap. Equity,* 646 B.R. at 477 (citation omitted). The court found Capital Equity's bankruptcy case was filed in bad faith partly because it found it used the bankruptcy case as a litigation tactic as the Debtor appealed orders adverse to it in the tax sale proceeding. *Cap. Equity,* 646 B.R. at 477. In that case, Capital Equity did not file a plan (although the Debtor's attorney said a plan would be filed); this court ruled its position that it will lease the premises if it succeeds in regaining title was speculative. *Id.* at 477-78. Here, although First Premier has filed a plan, the court finds it is based on the same speculative premise that the property will be returned to it and that its plans to develop

-18-

a hotel on the property are also speculative. *Id.*; *see* Plan (Dkt. 20), p. 3, *First Premier*. For this reason, the court finds First Premier is not likely to be able to reorganize in a reasonable amount of time, especially given Ms. Webb's testimony that First Premier currently owns no property and has not operated a business on the property. *See* Aug. 8, 2023 Hr'g. Tr. at 33–34, *First Premier*.

## IV. Conclusion

This court hereby orders that the Debtor's bankruptcy case will be dismissed under 11 U.S.C. § 1112(b). The court finds that this bankruptcy case is being used as a litigation tactic; it is essentially a two-party dispute between the Debtor and CCLBA this second filing is barred by res judicata. It is unlikely the Debtor will be able to reorganize, given that it has not operated a business on the premise in issue since it acquired the property.

A separate order will be entered dismissing this case.

Date: September 29, 2023

ENTER: _____

Hon. Jacqueline P. Cox
U.S. Bankruptcy Judge

-19-